```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: JAN 1 4 2013
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------- X
LOUIS GACHETTE,

                   Plaintiff,

       -v-

METRO NORTH HIGH BRIDGE, ET AL.,

                Defendants.
------------------------------------------------------------------- X

12 Civ. 3838 (AJN)

ORDER

ALISON J. NATHAN, District Judge:

On May 14, 2012, Plaintiff Louis Gachette, proceeding *pro se*, filed a complaint alleging

violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 1981, and the New York

State and City Human Rights laws. (Dkt. # 1) On July 19, 2012, Defendants Metro-North

Commuter Railroad Company ("Metro North"), Dave Plumb, and Preston Kirk moved to dismiss

the Complaint. (Dkt. # 4) On July 30, 2012, this Court issued an order advising Plaintiff of his

right to amend the complaint and informing him that should he choose to oppose Defendants'

motion to dismiss rather than amend the Complaint, no further opportunity to amend would be

given. (Dkt. # 7) Plaintiff chose to oppose Defendants' motion. (Dkt. # 8) However, Plaintiff

subsequently filed a motion seeking to amend the Complaint for the sole purpose of appending

documents received from the Equal Employment Opportunity Commission. (Dkt. # 11) For the

following reasons, Plaintiff's request to the amend the Complaint, (Dkt. # 11), is DENIED, and

Defendants' motion to dismiss, (Dkt. # 4), is GRANTED in part and DENIED in part.

## I.   LEGAL STANDARD

When deciding a motion to dismiss for failure to state a claim pursuant to Federal Rule of

Civil Procedure 12(b)(6), the Court must accept as true all well-pleaded facts and draw all

reasonable inferences in the light most favorable to the non-moving party. *See Kassner v. 2nd Ave. Delicatessen, Inc.*, 496 F.3d 229, 237 (2d Cir. 2007). The Court's consideration is "limited to the facts as presented within the four corners of the complaint, to documents attached to the complaint, or to documents incorporated within the complaint by reference." *Taylor v. Vt. Dep't of Educ.*, 313 F.3d 768, 776 (2d Cir. 2002).

Pleadings filed by *pro se* plaintiffs are to be construed liberally. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam); *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009). However, to survive a motion to dismiss, the complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A complaint containing nothing more than "a formulaic recitation of the elements of a cause of action" is insufficient, and the Court need not assume the truth of mere conclusory statements. *Id.*

Furthermore, the Court "is not obliged to reconcile plaintiff's own pleadings that are contradicted by other matters asserted or relied upon or incorporated by reference by [the] plaintiff in drafting the complaint." *Fisk v. Letterman*, 401 F. Supp. 2d 362, 368 (S.D.N.Y. 2005). *See also U.S. Bank Nat. Ass'n v. Bank of America, N.A.*, No. 12 Civ. 4873, 2012 WL 6136017, at *7 (S.D.N.Y. Dec. 11, 2012) ("Where plaintiff's own pleadings are internally inconsistent, a court is neither obligated to reconcile nor accept the contradictory allegations in the pleadings as true in deciding a motion to dismiss."); *Amidax Trading Group v. S.W.I.F.T. SCRL*, 607 F. Supp. 2d 500, 502 (S.D.N.Y. 2009) ("Where a conclusory allegation in the complaint conflicts with a statement made in a document attached to the complaint, the

document controls and the allegation is not accepted as true.").

## II.   FACTS

The following facts are taken from the Complaint and the documents attached thereto. (Dkt. # 1)  Plaintiff identifies himself as a black man of Haitian origin and African race.  He was employed by Metro North as an electrician from August 6, 2001 to approximately August 31, 2011, when his employment was terminated.  During this time, defendants Dave Plumb and Preston Kirk held managerial and supervisory positions at Metro North.

Plaintiff alleges that over the course of his employment he was discriminated against as the result of his color, national origin, and race.  For example, he contends that "black electricians were paid less than white ones."  Plaintiff also alleges that on May 29-31, 2010, he was denied overtime payments despite such payments being regularly made to white employees. Finally, Plaintiff alleges that on or about October 17, 2008, he was "wrongfully targeted for destroying Metro North properties" when in fact it was another employee who was responsible for the damage.

Plaintiff further alleges that his employment was terminated in retaliation for making complaints to Metro North regarding unfair treatment of black employees such as less pay and fewer promotions.  In a document attached to the Complaint, Plaintiff contends that Mr. Kirk "promis[ed] to fire Mr. Gachette by virtue of the fact that Louis Gachette had become a nuisance, in part because of so many letters that Louis Gachette wrote to the president and vice presidents voicing his grievance."

The Complaint goes on to allege that Plaintiff was "deliberately" selected to take a drug test on July 26, 2011, that he was "quickly categorized as non-committing . . . as though he had refused to provide any sample," and that "Metro North had brushed off the facts to make them

look as though Plaintiff was terminated for misconduct to subterfuge the real issues." Plaintiff

maintains that his "termination letter specified false reasons for [his] termination."

Documents attached to the Complaint provide more detail about the events of July 26,

2011. These documents indicate that on July 26th, Mr. Kirk informed Plaintiff that he was

required to take a drug test in accordance with the Department of Transportation's Federal

Random Drug Testing Regulations. Plaintiff was further told that in order for the testing to

proceed, he had to sign a notification form. Plaintiff asked that the test and form be explained to

him. Mr. Kirk gave Plaintiff forty-five minutes to sign the required notification form but

apparently gave Plaintiff no further explanation. When, after forty-five minutes, Plaintiff had not

signed the form, Mr. Kirk designated the incident as a refusal to submit to the drug test.

Plaintiff's perceived refusal led to his being charged with conduct unbecoming an employee and,

eventually, the termination of his employment.

## III.   DISCUSSION

Plaintiff asserts claims of discrimination and retaliation under Title VII, 42 U.S.C. §

1981, and the New York State and City Human Rights laws. Defendants move to dismiss each

of these claims as insufficiently pled. For the following reasons, Defendants' motion is

GRANTED with respect to Plaintiff's Title VII claim as alleged against all defendants, his §

1981 and New York State and City Human Rights Law discrimination claims as alleged against

Mr. Plumb and Mr. Kirk, his § 1981 and New York State and City Human Rights Law retaliation

claims as alleged against Mr. Plumb, and his § 1981 retaliation claim as alleged against and

Metro North, but DENIED with respect to Plaintiff's § 1981 and New York State and City

Human Rights Law discrimination claims as alleged against Metro North, Plaintiff's § 1981 and

New York State and City Human Rights Law retaliation claims as alleged against Mr. Kirk, and

4

Plaintiff's New York State and City Human Rights Law retaliation claims as alleged against
Metro North.

### A. **Plaintiff's Title VII Claim**

Defendants move to dismiss Plaintiff's Title VII claim on two grounds: (1) a Title VII
claim cannot be maintained against individuals, and (2) filing a timely charge with the Equal
Employment Opportunity Commission (the "EEOC") is a prerequisite to bringing suit in federal
court, which Plaintiff has failed to satisfy.  (Mot. 3-6)  The Court agrees on both points.

Individuals may not be held personally liable under Title VII.  *Reynolds v. Barrett*, 685
F.3d 193, 202 (2d Cir. 2012) ("Employers, not individuals, are liable under Title VII.").  Thus,
Plaintiff may not maintain a Title VII claim against either Mr. Plumb or Mr. Kirk.

Furthermore, filing a timely charge with the EEOC and obtaining a right to sue letter are
prerequisites to bringing a Title VII claim in federal court.  *Legnani v. Alitalia Linee Aeree
Italiane, S.P.A.*, 274 F.3d 683, 686 (2d Cir. 2001); 42 U.S.C.A. § 2000e–5.  Plaintiff admits that
he did not initially comply with these requirements.  (Opp. 4)  Instead, following the filing of
Defendants' motion to dismiss, Plaintiff sought to file a claim with the EEOC.  (Dkt. # 11)  The
EEOC denied Plaintiff's claim as untimely because it was filed more than 300 days following the
last possible date of discrimination.  (*Id.*)  Plaintiff's failure to file a timely charge with the
EEOC mandates dismissal of his Title VII claim.  *See Alleyne v. American Airlines, Inc.*, 548
F.3d 219, 219 (2d Cir. 2008) (affirming district court's dismissal of the plaintiff's discrimination
claim where the alleged discriminatory act occurred more than three hundred days before the
plaintiff filed a complaint with the EEOC).

For the forgoing reasons, Plaintiff's Title VII claim is DISMISSED against all
Defendants.

For the same reasons, Plaintiff's proposed amendment of the Complaint in order to append the documents he received regarding the EEOC's denial of his claim would be futile. Consequently, Plaintiff's request to amend the Complaint, (Dkt. #11), is DENIED. *See Ruotolo v. City of New York*, 514 F.3d 184, 191 (2d Cir. 2008) (leave to amend properly denied if amendment would be futile).

### B. Plaintiff's § 1981 and New York State and City Human Rights Law Discrimination Claims As Alleged Against Mr. Plumb and Mr. Kirk

Plaintiff alleges that he was subjected to discrimination by Mr. Plumb and Mr. Kirk in violation of 42 U.S.C. § 1981 and the New York State and City Human Rights laws. To survive a motion to dismiss, a complaint alleging a § 1981 discrimination claim "must specifically allege the events claimed to constitute intentional discrimination as well as circumstances giving rise to a plausible inference of racially discriminatory intent." *Yusuf v. Vassar Coll.*, 35 F.3d 709, 713 (2d Cir. 1994). It is essential to a § 1981 claim "that the defendants' acts were purposefully discriminatory and racially motivated." *Albert v. Carovano*, 851 F.2d 561, 571 (2d Cir. 1988) (citations omitted). *See also Olivera v. Town of Woodbury*, 281 F. Supp. 2d 674, 684 (S.D.N.Y. 2003) ("§ 1981 claims, like those under the Equal Protection Clause, must be based on intentional conduct.") (citing *Gen. Bldg. Contractors Ass'n, Inc. v. Pennsylvania United Engineers & Constructors, Inc.*, 458 U.S. 375, 391 (1982)). The same standard applies to claims of discrimination pursuant to the New York State and City Human Rights laws. *Ochei v. The Mary Manning Walsh Nursing Home Co., Inc.*, No. 10 Civ. 2458, 2011 WL 744738, at *3 (S.D.N.Y. Mar. 1, 2011).

Mr. Plumb and Mr. Kirk move to dismiss Plaintiff's discrimination claims on the grounds that Plaintiff has not adequately pled that they took actions with respect to Plaintiff's employment on the basis of racial animus. (Mot. 10-11) The Court agrees.

6

The Complaint contains only a single, non-conclusory allegation regarding Mr. Plumb: that he denied Plaintiff's May 29-31, 2010 requests for overtime pay despite regularly paying white employees for overtime work. To the extent Plaintiff alleges that he was improperly denied payment for overtime work actually performed, the June 7, 2010 letter addressed to Louis Simms, Union President, which Plaintiff attaches to the Complaint, undermines the plausibility of any such claim. This is because the letter charges that Stanley Willard, the Union Representative, failed to assign Plaintiff overtime at all, thereby indicating that Plaintiff did not in fact work overtime. As a result, Plaintiff has failed to plausibly allege that Mr. Plumb refused to compensate Plaintiff for overtime work that had been performed.

The Complaint can also be read to allege that Plaintiff was improperly denied the opportunity to work overtime in the first place. However, to the extent this allegation is directed at Mr. Plumb rather than at Metro North more generally, Plaintiff fails plausibly to allege that Mr. Plumb, acting out of racial animus, denied Plaintiff such opportunities.

The allegations in the Complaint are similarly deficient with respect to Mr. Kirk. Indeed, the Complaint itself contains no mention of any actions that Mr. Kirk personally took with respect to Plaintiff's employment. Rather, it is only in documents attached to the Complaint that Mr. Kirk is described as having told Plaintiff that he was required to submit to a drug test on July 26, 2011. However, nowhere in the Complaint or the attached documents are there facts suggesting either that Plaintiff was subjected to drug testing because of his race or that Mr. Kirk harbored racial animus. Consequently, the facts contained in the Complaint do not give rise to a plausible inference that Plaintiff was asked to undergo a drug test as the result of racial animus.

Because neither the Complaint nor the documents attached thereto contains facts giving rise to a plausible inference that Mr. Plumb or Mr. Kirk took any action with respect Plaintiff's

employment on the basis of racial animus, Plaintiff's discrimination claims are DISMISSED as
against these defendants.

### C. Plaintiff's § 1981 and New York State and City Human Rights Law Discrimination Claims As Alleged Against Metro North

Metro North also moves to dismiss Plaintiff's § 1981 and New York State and City
Human Rights Law discrimination claims. (Mot. 6-7, 9-11)  Metro North makes both a general
argument for dismissal – that Plaintiff has failed to allege that he was discriminated against on
the basis of race – and a specific argument with respect to Plaintiff's § 1981 claim – that Plaintiff
has not adequately pled that he was discriminated against as the result of municipal policy or
custom. (*Id.*)

To the extent Plaintiff contends that his employment was terminated because of his race,
the Court agrees with Defendants that there are insufficient facts in the Complaint and attached
documents to support such a claim.  A plaintiff claiming employment discrimination must allege
a causal connection between his membership in a protected class and the adverse employment
action suffered – simply alleging that Plaintiff is black and that his employment was terminated
is insufficient to satisfy this requirement. *See Bermudez v. City of New York*, 783 F. Supp. 2d
560, 581 (S.D.N.Y. 2011).

Similarly, to the extent that Plaintiff bases his discrimination claim on being "wrongfully
targeted for destroying Metro North properties," he fails to allege that such "targeting" occurred
because of racial animus.

However, the Complaint also alleges that "black electricians were paid less than white
ones" and that Plaintiff was denied overtime work assignments, which were instead given to
white electricians.  Metro North does not address either of these allegations in its moving papers.
For the reasons that follow, the Court finds these allegations sufficient to state § 1981 and New

8

York State and City Human Rights law discrimination claims against Metro North.

Disparate treatment of employees on the basis of race is unlawful under both the New York State and City Human Rights laws. N.Y. Exec. Law § 296(1)(a); N.Y.C. Admin. Code. § 8-107(1)(a). By alleging that Metro North was his employer, that he is black, that "black electricians were paid less than white ones" and that he was denied overtime opportunities that were instead given to white electricians, Plaintiff has sufficiently alleged New York State and City Human Rights Law disparate treatment claims against Metro North.

Disparate treatment on the basis of race is also a violation of § 1981. 42 U.S.C. § 1981(a)-(b); *Patterson v. Cnty. Of Oneida*, 375 F.3d 206, 224 (2d Cir. 2004) (§ 1981 prohibits racial discrimination with respect to employment). However, the Court must separately assess Metro North's argument for dismissal of Plaintiff's § 1981 discrimination claims.

As Metro North argues, it is a municipal entity and therefore can only be held liable under § 1981 if the requirements for municipal liability under 42 U.S.C. § 1983 are met. *Jett v. Dallas Independent School District*, 491 U.S. 701, 733 (1989) ("[T]he express cause of action for damages created by § 1983 constitutes the exclusive federal remedy for violation of the rights guaranteed in § 1981 by state governmental units."). In *Monell v. Department of Social Services*, 436 U.S. 658, 694 (1978), the Supreme Court held that a municipal entity may only be held liable under § 1983 if the plaintiff's injury was caused by the entity's policy or custom. Metro North argues that Plaintiff has failed to adequately allege that he was discriminated against as the result of a municipal policy or custom. (Mot. 6-7) However, given the Court's obligation to liberally construe a *pro se* complaint, the Court concludes otherwise.

With respect to Plaintiff's disparate pay claim, his allegation that "black electricians were paid less than white ones" suggests a broad practice of differential pay on the basis of race. With

respect to Plaintiff's claim that he was denied overtime opportunities on the basis of race, the June 7, 2010 letter addressed to Mr. Simms (discussed *supra* p. 7) indicates that "management" pressured Plaintiff's Union not to assign him overtime, and the Complaint alleges that these overtime assignments were instead given to white electricians. The Court finds this sufficient to allege that a Metro North policymaker was responsible for depriving Plaintiff of overtime opportunities on the basis of race. The Court therefore finds that Plaintiff has stated disparate treatment claims against Metro North under § 1981.

For the forgoing reasons, Metro North's motion to dismiss is DENIED to the extent that Plaintiff's § 1981 and New York State and City Human Rights Law discrimination claims are limited to claims of disparate pay or denial of overtime opportunities on the basis of race.

### D. Plaintiff's § 1981 and New York State and City Human Rights Law Retaliation Claims

Plaintiff alleges that, in violation of § 1981 and the New York State and City Human Rights laws, his employment was terminated in retaliation for complaining about Defendants' discriminatory practices. Such retaliation, if it occurred, is prohibited by these laws. *CBOCS West, Inc. v. Humphries*, 553 U.S. 442 (2008) (§ 1981 encompasses retaliation claims); N.Y. Exec. Law § 296(7); N.Y.C. Admin. Code. § 8-107(7).

Under § 1981 and the New York State Human Rights Law, a plaintiff alleging retaliation must allege that (1) he participated in a protected activity known to the defendant; (2) the defendant took an employment action disadvantaging him; and (3) there exists a causal connection between the protected activity and the adverse action. *Mazyck v. Metropolitan Transp. Auth.*, No. 07 Civ. 3561, 2012 WL 3865155, at *12 (S.D.N.Y. Sept. 4, 2012). Under the New York City Human Rights Law, the plaintiff need not have suffered a materially adverse employment action; instead, the defendant need only have taken "an action that would be

10

reasonably likely to deter a person from engaging in a protected activity." *Id.*  Defendants move

to dismiss Plaintiff's retaliation claims as inadequately pled. (Mot. 11-15)

The Court agrees that neither the Complaint nor the documents attached thereto contain

non-conclusory allegations that Mr. Plumb took any actions with respect to Plaintiff because of

his complaints about unequal treatment.  Plaintiff has therefore failed to state a retaliation claim

against Mr. Plumb.

The same is not true, however, for Plaintiff's retaliation claim against Mr. Kirk.  Based

upon a liberal construction of the Complaint, Plaintiff alleges that he engaged in protected

activity (*i.e.*, complaining about racial discrimination), that Mr. Kirk was aware of this  activity

and promised to fire Plaintiff for having made these complaints, that Mr. Kirk "deliberately"

selected Plaintiff for drug testing, and that Mr. Kirk improperly designated Plaintiff's request for

further information before signing the notification form as a refusal to submit to the drug test,

which lead to termination of Plaintiff's employment.  Notably, Defendants do not address in their

papers Plaintiff's allegation that Mr. Kirk specifically threatened termination in response to

Plaintiff's complaints.  Given not only that Defendants have not addressed this allegation in their

motion, but also that the Court is obligated to liberally construe a *pro se* complaint, the Court

finds that Plaintiff has stated a retaliation claim against Mr. Kirk.[1]

Having found that Plaintiff has stated a retaliation claim against Mr. Kirk, the question

then is whether Plaintiff has, as a result, also stated a retaliation claim against Metro North.  As

discussed *supra* § C, Metro North can only be held liable under § 1981 if Plaintiff was injured as

the result of Metro North's custom or policy.  Plaintiff has not alleged sufficient facts to give rise

---

[1] The Court notes that a retaliation claim is not negated merely because the underlying claim of discrimination was unsuccessful. *See, e.g.*, *Romaine v. New York City Colle of Tech.*, No. 10 Civ. 0431, 2012 WL 1980371 (dismissing discrimination claim but allowing retaliation claim to proceed) (E.D.N.Y. June 1, 2012); *Modiano v. Elliman*, 262 A.D.2d 223 (1st Dep't. June 24, 1999).

to a plausible inference that Metro North either has an official policy or a persistent and widespread practice of retaliation against individuals who complain of racial discrimination. Plaintiff has failed to state a § 1981 retaliation claim against Metro North.

However, Metro North's liability under the New York State and City Human Rights laws is not subject to the same custom or practice requirement.  Instead, under both laws, an employer generally cannot be held liable for the discriminatory conduct of an employee toward a co-employee unless either (1) the discriminatory conduct was engaged in by an employee with managerial or supervisory authority or (2) the employer became a party to the discriminatory conduct by encouraging, condoning, approving, or acquiescing in it.  *See* N.Y.C. Admin. Code § 8-107(13)(b)(1)-(3); *State Div. of Human Rights v. St. Elizabeth's Hosp.*, 66 N.Y.2d 684, 687 (1985); *Matter of Father Belle Community Ctr. v. New York State Div. of Human Rights*, 221 A.D.2d 44, 52-53 (4th Dep't 1996).  Plaintiff expressly alleges that Mr. Kirk held both managerial and supervisory authority at Metro North.  As a result, the Court finds that Plaintiff has stated a retaliation claim against Metro North under both the New York State and City Human Rights laws.

## IV.   CONCLUSION

For the foregoing reasons, it is hereby ORDERED that Plaintiff's request to the amend the Complaint, (Dkt. # 11), is DENIED.

IT IS FURTHER ORDERED that:

Plaintiff's Title VII claim is DISMISSED as against all Defendants;

Plaintiff's § 1981 and New York State and City Human Rights Law discrimination claims are DISMISSED as alleged against Mr. Plumb and Mr. Kirk;

Plaintiff's § 1981 and New York State and City Human Rights Law retaliation claims are DISMISSED as alleged against Mr. Plumb;

And Plaintiff's § 1981 retaliation claim is DISMISSED as alleged against Metro

12

North.

The following claims remain:

> Plaintiff's § 1981 and New York State and City Human Rights Law discrimination claims as alleged against Metro North, to the extent that they are based on allegations of disparate pay or denial of overtime opportunities on the basis of race;

> Plaintiff's § 1981 and New York State and City Human Rights Law retaliation claims as alleged against Mr. Kirk;

> And Plaintiff's New York State and City Human Rights Law retaliation claims as alleged against Metro North.

SO ORDERED.

Dated: January 14, 2013
       New York, New York

_____
ALISON J. NATHAN
United States District Judge

*Copy Mailed to pro se party 1/14/13*

13